16-1474 United States v. Scott. Mr. Morton. Good morning your honors and may it please the court Alan Moritz and on behalf of appellant David Scott I'd like to reserve four minutes of my time for rebuttal. There's a lot of issues raised in the briefing I'd like to focus the discussion this morning on two of those issues. The first being the error in instruction 14 regarding constructive possession and the second being the district courts admission of Mr. Scott's prior conviction under rule 404 B. Starting first with the error in instruction 14 the government acknowledges that instruction 14 contained an error and that that error was plain because it omitted the element of intent and so then the question becomes whether that error affected Mr. Scott's substantial rights. The analysis under Hawley when the government advances two theories on which the defendant may be held guilty is that we focus on the evidence supporting the theory on which the jury was improperly instructed. And there have been three published opinions essentially that have grappled with this issue since that the Tenth Circuit inserted the element of intent into constructive possession. Little, Simpson and Benford and we think this case is far closer to Simpson and Benford which held that the error was harmful or that affected the defendant's substantial rights. As you remember in Little the court found it harmless because the there was evidence submitted that showed to an absolute certainty that the defendant exercised exclusive control over the location or the premises in which the firearm was found. By contrast in Simpson and Benford the court found it important that it was a joint occupancy situation where there was more than one individual besides the defendant who had access to the premises and the location in which the firearm was located and for that reason found that the omission of intent was harmful in those cases. In this case defense counsel's one of defense counsel's most prominent themes at trial was that the government had failed to explore or investigate whether the other occupants of the vehicle were somehow connected to the firearm that was found in the car and in response the government did its best to connect Mr. Scott in particular to that firearm but then held as the ultimate backdrop that it didn't matter because under instruction 15 you could have multiple joint possessors of the firearm at the same time. The gun was under the middle seat which is where the gun was and gang style clothing was next to the gun underneath the middle seat. So he was one of three. Sorry I didn't hear the first part of the question sorry your honor. I was just looking at the evidence that links the other evidence that links Scott to the firearm. Well there were four discrete items of evidence that that they tried to link Mr. Scott to the firearm. One was at least two probably three other occupants of the car. At least one other who was sitting in the back seat. Who was closest? I don't think the evidence establishes who was closest I think there were two occupants in the back seat and the gun was found in the middle under the back seat. And so there was Mr. Scott in the back seat and then there was I believe Mr. Dixon in the back seat. And on the DNA point yes Mr. Scott's DNA was found on the firearm along with two or three other DNA profiles. Were those identified the other two or three? Say again sorry. Was the source of the the three other pieces of DNA identified? Do we know who they were? We don't know and in that that's because there was no effort made to take DNA samples from the other occupants of the vehicle or to. We do know that Mr. Scott's was the the primary DNA on the firearm. Well the terminology that's used is the major contributor. Major contributor. And we don't what we don't know though is the significance of that evidence and I think if you look at the trial testimony you see essentially a battle of the experts as to what exactly that signified in terms of whether Mr. Scott was most likely to have touched the gun whether he is particularly a shedder of DNA. Does the record indicate whether there can be more than one major contributor? As far as I'm aware that that discussion was not part of what happened below that that question was not posed and I don't know what the science has to say about that. What I do know is that the defense made a major part of its case its own DNA expert which pointed out that the limitations of trace DNA evidence that it is impossible to say how the DNA arrived on the gun. It is impossible to say under what circumstances. It's impossible to say when it arrived on the gun and that brings up I think a crucial point about the harmlessness inquiry because at the conclusion of trial the government is focusing its argument on the other act evidence which I was going to get to in a minute but if the DNA evidence was so overwhelming why did the government feel the need to emphasize to the jury the other examples and again it is in joint occupancy situations when this court has found the omniscient intent in a constructive possession instruction to be most problematic and the methods the government used here to try and connect Mr. Scott to the firearm could have equally applied to the other occupants of the vehicle. The second point I wanted to make this morning has to do with the district court's admission under Rule 404 B of Mr. Scott's prior conviction for unlawful possession of a firearm. As this court is well aware, Rule 404 B asks jurors and lawyers and courts to identify a chain of reasoning that connects other act evidence to a permissible purpose under Rule 404 B that does not require the jury or the court to travel through the character propensity box and when the permissible purpose is knowledge this court and other courts across the country consistently require similarity between the other act evidence and the charge defense. Is that under Moran? Is that really fair? I mean in Moran it was 10 years between the prior conviction and the opinion doesn't talk about the similarity. It doesn't and as we point out in our brief we believe that Moran is an outlier in this court's precedence. As Judge Timkovich put it in United States versus Henthorne just recently the linchpin of Huddleston relevance is similarity and so when you when Moran declined to address the similarity between the prior conduct and this conduct it deviated from that fundamental principle. Although we did cite Moran and Henthorne didn't we? You did. You did cite Henthorne. I don't think the question in that issue was presented with respect to whether a prior conviction the bare fact of a prior conviction was sufficiently similar to the charge defense to warrant an inference of knowledge and I do think we talk about United States versus Wilson in our briefing and I understand that Wilson deals with cocaine and Moran deals with it. In Moran you see a defendant who argues I did not, excuse me, I did not know the cocaine was in the backyard of the residence I was occupying. He's claiming a lack of knowledge about the location of the cocaine. Just like in Moran the defendant is claiming a lack of knowledge about whether the rifle was in the backseat of the car. But there it was two separate crimes because the prior conviction was distribution. We're here we have both the same crime. That's undoubtedly true but if you read page 784 of Wilson what you see them focusing on with respect to the admission of the prior cocaine possession conviction is knowing possession is exactly the element that is at issue here and if you read. But it's knowing possession with intent to distribute in the crime at issue. I understand that. My only point is that it is a separate element. The government in that case has to prove as a separate element that the defendant knowingly possessed the cocaine and in order to prove that element the government introduced the prior conviction for possession of cocaine and this court said that although it suggests the defendant knew what cocaine as a substance was it did not suggest that he knew there was cocaine in the backyard and I think that that is fundamentally inconsistent. Be that as it may. What about the 2010 conviction though and the underlying facts? Isn't there substantial similarity there? There is and I'm not here to deny that there is substantial similarity but what I am here to insist upon is that the government told the district court that we are not going to get into those facts when we present the case to the trial. Well but that's not the focus. The focus is on what the proffer is before trial. Isn't that correct? Well the focus is on the proffer as long as the government is insisting that what it will present that trial is consistent with the proffer. Well and it was just you know it was consistent with the proffer it just didn't include everything because as I understand from the proffer my reading of it was that it was very similar here and that it was I believe the gun in question in the 2010 circumstance was wedged between the seat and the back piece. Isn't that so? It is so but it is crucial that at the pre-trial hearing the government told the district court we are not going to get into those facts and circumstances at trial. And so when the district court made its ruling as to the admissibility of that 2010 conviction it was basing its ruling on the bare fact of the 2010 conviction. Because what matters is what is going through the minds of the jurors. That's what the district court is supposed to do. Well I understand but your client got a benefit by not putting in all the facts but merely the fact that it was a conviction for possession. And the fact that they didn't go into the underlying evidence and that is it was stuck between the seat much like this that benefited your client didn't it? I'm not here to deny that it benefited the client but what I am here to insist upon is that the government my client the defense counsel didn't argue against admission of I mean it argued under rule 404B but it was the government who unilaterally elected to not introduce those facts and circumstances. Had they done so yes this case would have been closer to Los Canos Villa Lobos where you have similar circumstances but here all you have is the bare fact of the conviction because that's what Moran allows. If I could reserve the remainder of my time for rebuttal. Thank you counsel. May it please the court. Carl Schock representing the United States. I'd like to begin by addressing the jury instruction issue. To satisfy the third prong of plain air review here it's the defendant's burden to show that there's a reasonable probability that this jury despite finding that the defendant knew about a gun hidden under his seat which he had the power to take control over nevertheless would have found that he did not intend to exercise that control. And based on the evidence at trial and in particular a statement in the jury instruction that the jury was required to find a connection between the defendant and the gun there's no reasonable probability that the jury would have made that finding here. I'd like first the defendant's DNA was on the gun and not only that but the defendant's DNA was not on the magazine, right? That's correct. But there was other DNA on that that was never tested. I don't recall whether there was other DNA on the magazine or whether there was no DNA on the magazine but that's correct. And there was no attempt to see if the other occupants in the car's DNA matched the DNA on the gun? There's not and the defense at trial would call into question the expert's certainty as to what this DNA on the gun meant. But again when we're dealing with plein air we're dealing with reasonable probability and what the jury probably would have found, not theoretical possibilities. And here where the jury found that the defendant knew about the gun and the defendant's DNA was on the gun the reasonable probability is that the jury would have found that the defendant had the gun. How do you get around Simpson? I get around Simpson? Well in Simpson, so what the DNA says is that at least at some point this defendant possessed this gun or at least that's probability. In Simpson the court said that that wasn't alone enough. But in Simpson that's all there was. Here we have a lot more than the fact that the defendant had possessed the gun in the past. We have the fact that the gun was found hidden under his seat and Exhibit 23 shows that it was under the defendant's seat. It wasn't simply in the middle of the backseat. It was actually under the defendant's seat specifically. But there was also testimony that it could have moved during the traffic accident. I don't think there was testimony. There was argument on that point. There was, the testimony was that the seat was loose. Not that the gun would move. So it could have moved? Yeah I think the reason for that testimony was the point that it was easy to lift it up and put a gun under there. That was the testimony. The backseat was a bench seat, wasn't it, rather than a split seat? It was. Yeah. But so it was under the defendant's seat. It was hidden in a position consistent with the defendant having placed it there. And importantly the defendant was the only one in the car with a felony conviction. So he was the one who had the reason to hide it. We also know that the defendant knew, that the jury found that the defendant knew the gun was there. We also know that the jury found a conviction between, or a connection between the defendant and the gun beyond his mere presence in the vehicle. So I would argue that the connection between the defendant and the gun was much stronger here than it was in Simpson, where the gun was simply found in a jointly occupied space generally with no more specific connection to the defendant than to the other co-occupants. Getting back to the DNA, is there anything in the record that indicates that there could be more than one substantial contributor of DNA? I don't think so. I think that what major component means is that that's the person who has the most DNA on the gun. Does the record verify that? Does it indicate exactly what major contributor means? It does indicate that, and I believe I'm stating it correctly, that it means that there's more of his DNA than anybody else's. So what this really comes down to is the defendant has given no reason to believe that this jury would have found that this defendant, not withstanding his prior conviction, got into this car knowing that there was a gun hidden under his seat, a gun that he had possessed before, and a gun that he had access to that night and the power to control that night, but this time did not intend to exercise that control. In the trial, as distinguished from the sentencing, did the evidence come in about Scott's statement while he was in prison that a gun should be disposed of? No, that just came out of sentencing. That was only sentencing? Yeah, and that was a different gun subsequent to this occasion anyway. And I would submit that this case is actually more like Fikes, and I recognize Fikes as an unpublished case, but in that case, like here, the gun was found in a jointly occupied vehicle, but it was found in a location that was more specifically connected to the defendant than to the other occupants of that vehicle. Here, the defendant's seat. In that case, the defendant's backpack. Also, like Fikes, although the government didn't expressly come out and say this gun belonged to the defendant, that was clearly the theory in the case. All of the evidence that the government focused on. Well, the government's argument pretty clearly tells the jury that they can convict if he knew the gun was there and doesn't require that he exercise control over it. I mean, the government argued the instruction the way it was given. It did. The government essentially just cited the instruction. I mean, it quoted the instruction. But all of the evidence that the government gave was presenting a theory that the defendant put it there. I mean, that was the whole focus of the DNA evidence. That was the focus of why the government argued that it was positioned in a way consistent with the defendant having put it there. The attempt to link the defendant to the bandana and glove that was found with the gun. All of that, the theory, the fact that the defendant was the only one with a felony reason to hide it. All of that, the theory was. You really think driving around with a gun in the car there might be other people who thought it was a good idea to hide it? I don't know. If somebody is lawfully able to possess a gun, I don't know that there's any reason to pick up the back seat and put a gun under it. Well, you don't have to go through those types of contortions. It's a bench seat. You just slip it under there. Sure. But if you're entitled to lawfully possess a gun, I don't know that you have any reason to do that. I don't think that the rate that an average person without a felony would get in a car accident and immediately go hide a lawful gun. I guess it depends on what they're up to. Sure. Sure. But the point here is that the government's theory was that it was the defendant's gun. And when the jury found that the... But the government clearly argued that you don't have to find that it's the defendant's gun, that everyone in the car together could have constructive possession. More than one person can have constructive possession of this gun. That's true. And that's still the case today, even with intent being a requirement. There can still be multiple people. But I would just submit that when the government did make that statement, it was after it had presented its entire theory about why this was the defendant's gun. And then it just simply said at the end, in addition, all we need is knowledge and access. And I don't even think it phrased it that way. It just said multiple people can simultaneously have constructive possession. And in Fikes, you had a backpack where the defendant admitted it was his backpack, but was saying, oh, I didn't know there was a gun in there. And he loaned it to his friend. But then they also found his passport in there. They found a connection to his computer in there. They found a bunch of stuff linking the backpack directly to the defendant. I don't think this case is Fikes at all. Well, I would say that here the defendant admitted that it was his seat, and they found DNA linking that gun to him. So I would say that there is a similarity in that way, that he admitted that it was in a place more associated with him. And they found evidence linking him. Not only the DNA, but, of course, the government also argued that the bandana and the glove linked it to the defendant as well. So there was that argument, as there was in Fikes. Just one other point on distinguishing. I mentioned Simpson, but also distinguishing Benford. Benford, in the same way, was simply a jointly occupied space generally. But another issue in Benford was that the court focused on the fact that the gun was in plain view. And where the gun is in plain view, it's much more plausible that you know about the gun without any intent to exercise control over it. Where the gun is not in plain view, like here, if the defendant knows about it, it's more likely that the defendant has an intent to exercise control over it, because it wouldn't simply be apparent to a mere bystander the way it would in the Benford case. I'm just unpacking that. That's why I have that look on my face. The issue I'm making is that if a gun is just in open space in plain view, it makes sense that a defendant might know about that gun, but have no intent to exercise control over it. Because if he walks in the room, he knows about it. On the other hand, if the gun is hidden, it's not something where a person would just know about the gun without having had some involvement in getting the gun there. But that assumes all the things that he was, in fact, the one who placed the gun there. Right. But my point is we know that he knew about the gun. And how would he know about the gun when it wasn't in plain view unless he had some involvement in getting it there? Or he saw somebody put it there. Okay. Unless the Court has any further instructions on the jury instruction, I just want to address the 404B issues. All three of these issues are controlled by Moran and McLaughlin, and this Court has held as recently as Benford four months ago that Moran is the law in this circuit. Should we change? I mean, is it time for us to reconsider Moran en banc? It's not. And I think it's actually this is an opportunity to reaffirm why Moran is even more correct now that intent is an element of constructive possession. And there's a footnote in Benford that goes to that point. And that's because the heightened burden of showing intent makes these prior instances of possession even more probative now. If a defendant has a prior felon in possession conviction, it's more likely that that defendant should be on notice that he shouldn't be around guns. If he nevertheless knows about a gun and gets in a car knowing that there's a gun hidden under his seat, it's more likely that he intends to exercise control over that gun. Then should we address the 404B issue depending upon whether the prior conviction was before or after Little? Whether the prior conviction was before or after? Whether the prior conviction actually involved an intent requirement. I don't think that matters. The point that I'm making is that once you have a prior felon in possession conviction, you're on notice that you shouldn't possess guns and you shouldn't be around guns. If you nevertheless know about a gun, so it's not what happened before, it's that you know that you're not entitled to have guns. And so if you nevertheless put yourself in a situation where you know that there's a gun and you are close to a gun, it's more likely that you would intend to possess it. Why is that? Why would there be a more plausible inference of intent to control or exercise dominion just because you're of a prior? Because otherwise there would be no reason. If it's not your gun and you have no intent to have any connection to this gun, there's no reason for a person to put themselves in a position, put themselves at that risk of being so closely connected to a gun. Well, if he's in a car and he knows somebody is in lawful possession of a gun. Then he's on notice not to be in that car. Only if he intends to exercise control over that gun. It certainly makes it more likely that if a defendant has received this prior conviction, it's more likely that he's going to be on alert, to be checking, to know whether there's a gun in that car. If he nevertheless gets in that car, first of all, it's more likely that he knows the gun's there because he's on alert and should be checking that out. If he does know that there's a gun in the car and nevertheless puts himself in that position. He says, well, I don't have any intent, so I'm good to go on constructive possession. I'm not vulnerable. It's theoretically possible. I'm in a kitchen with a friend. The friend has a gun in the kitchen. I know the gun's there. Right. It's possible, but we're dealing with whether it makes it more likely or not. Why is that more likely than not? The knowledge component. The knowledge component because it's more likely that a defendant who has a prior conviction would be asking, is there a gun around? Therefore, if there is a gun around, it's more likely that he would know about it. Then somebody who has no reason to be checking, there's no reason that they would know about a gun that might be hidden somewhere. It's more likely that this person would be checking. Assuming that we don't think the evidence is quite as strong as you think it is, then our focus maybe should be on the balancing. Isn't that so? On the 403 analysis? Yes. Possibly. I would say that Moran, and in particular McLaughlin, also control on that piece. But Moran recognized the problem, and that is that there is an element of propensity here, undoubtedly. And when the evidence at trial, as distinguished from the proffer, just shows mere possession, isn't that really trying to convict a guy on propensity to possess? He did it in the past, so he did it now. And if I could answer that question? Please. I would say it would be closer to that. I would say it would still be controlled by Moran because there was nothing else there. I would say that the specific propensity you're talking about is not the general propensity or character trait that 404B is worried about. So I would answer that that way. I would say that Moran controls. And then I would also say that, as you already pointed out, there were similarities here. But we're not talking about that. When we're doing the balancing, we're not talking about the proffer. We're talking about the evidence at trial, correct? Correct, but we would need to be focused on when the judge ruled on the admissibility. No, but if we're focusing on what came in at trial, the similarity of the circumstances did not come in. It was the mere conviction. Sure, and in that case, though, we'd be dealing with a plain error standard of review because there was no objection on 403 based on what happened at trial. So, yes, if we're focusing purely on what happened at trial in a 403 analysis, I think it would be plain error there, and I don't think there would be plain error under Moran and McLaughlin. All right. Thank you, counsel. If I could just make three quick points. Counsel relied on Fikes on the constructive possession point, and it's important to remember that the government's theory in Fikes was that the defendant owned the backpack, owned the firearm, and it was that analysis that led the court to find that error harmless in that case. Isn't your best case on this focusing on the balancing? If you think so, then it is my best case. No. You can't ask me a question. It's a question. No, and I did want to focus on the rule 403 because that is what Moran left open to subsequent courts. Counsel relies on Moran and McLaughlin to say, well, the rule 403 analysis is controlled by those cases here as well. But here's a significant difference, and I take issue with the plain error point. Counsel renewed the objection to the conviction evidence at trial, not as to the ex-girlfriend's testimony, but as to the conviction and the rule 404B analysis that includes a rule 403 balancing. But at trial, defense counsel stood up, and I believe no fewer than three times in his opening statement, stated that Mr. Scott is no stranger to guns, is not a virgin when it comes to guns. So he is acknowledging Mr. Scott's familiarity with guns. So if it is familiarity with guns that supports the inference that he knew the gun was under the backseat of the car, then what probative value is added by the prior conviction, the bare fact of the prior conviction that he possessed a different firearm in the past? There is no additional probative value added by that. Other than propensity. Other than propensity. Exactly right. And in both McLaughlin and Trent, this court emphasized the tremendous and grave danger associated with introducing evidence of a prior conviction, especially when that prior conviction is exactly the same crime for which the defendant is charged in this case. For these reasons, we ask the court to reverse the jury's verdict below. Thank you, counsel. We understand the arguments. You're excused, and the case will be submitted.